ESSEX COUNTY ACCEPTANCE CORPORATION *vs.* THE PIERCE-
ARROW SALES COMPANY OF BOSTON.

Suffolk.    May 9, 1933. — October 29, 1934.

Present: RUGG, C.J., PIERCE, FIELD, & LUMMUS, JJ.

*Estoppel. Mortgage,* Of personal property.    *Bailment. Bona Fide Purchaser.*

At the hearing of an action of replevin of an automobile, the following
facts appeared: The defendant, owner of the automobile, delivered
possession of it to a dealer in automobiles and sent him an invoice
showing him to be a purchaser of the automobile for a certain sum
"cash on delivery." The purchase price was not paid and the dealer
returned the automobile to the defendant, but kept the invoice. A
few weeks later the defendant placed the automobile in the possession
of the dealer under a "trust receipt" which gave the dealer restricted
authority to sell automobiles in trust for the defendant. The dealer
then drove the automobile to the plaintiff's place of business and
requested a loan upon the security of a chattel mortgage of the auto-
mobile, showing the automobile and the defendant's invoice to the
plaintiff and stating to him that the invoice had been paid by check.
The invoice did not show that it had been paid. The plaintiff, with-
out communicating with the defendant, advanced money to the dealer
and took his note secured by the chattel mortgage. Nine days later
the dealer paid that note. A few days later still, he negotiated with
the plaintiff another loan secured by another mortgage of the auto-
mobile, which he again showed was in his possession. The plaintiff
acted in good faith and without actual knowledge of the defendant's
interest in the automobile. It was agreed that the provisions of G. L.
(Ter. Ed.) c. 104, were not applicable. The plaintiff sought to main-
tain the action upon the basis of the later mortgage. *Held,* that

(1) The plaintiff dealt with the dealer as the owner of the auto-
mobile and as a principal in giving such mortgage and not as an agent
of the defendant, and the plaintiff therefore was not aided by any
ostensible authority to act for the defendant which the dealer might
have had;

(2) In the circumstances, the plaintiff was put on inquiry to ascer-
tain the title which the dealer had, and was not aided by the circum-
stance that he lent the money to the dealer and took the mortgage
from him in good faith;

(3) Nothing appeared to estop the defendant to assert his title in
defence to the action;

(4) The action could not be maintained.

REPLEVIN. Writ in the Municipal Court of the City of Boston dated December 23, 1931.

The action was heard in the Municipal Court by *Carr*, J. Material facts are stated in the opinion. The judge ordered a return of the property and assessed the defendant's damages in the sum of $1. A report to the Appellate Division was dismissed. The plaintiff appealed. It was agreed by the parties that the provisions of G. L. (Ter. Ed.) c. 104 were not applicable.

*R. E. Blake*, (*A. R. Pitcoff* with him,) for the plaintiff.

*W. A. Kneeland*, (*F. G. Loud* with him,) for the defendant.

PIERCE, J. This is an action of replevin in which the plaintiff seeks to recover the possession of an automobile alleged to have been held unlawfully by the defendant. The answer is a general denial and a denial of property in the plaintiff with an averment of title and right to possession in the defendant. Before bringing this action the plaintiff duly demanded the automobile of the defendant. The action was heard in the Municipal Court of the City of Boston. The trial judge found for the defendant in $1 damages, and ordered a return of the property. The case was reported to the Appellate Division of said court, which dismissed the report. It is before this court on the appeal of the plaintiff from the decision of the Appellate Division.

A summarized statement of the facts found by the trial judge discloses that, at the time of the transactions hereinafter described, the plaintiff was a corporation in Salem, and was there engaged in the business of financing the purchase of motor vehicles; that George W. Nixon, Inc., hereafter called the Nixon company, was a corporation located in Lynn, and was engaged in the business of selling at retail Pierce-Arrow automobiles; that one Nixon was treasurer of the Nixon company and whenever he is hereafter referred to it is to be understood that he was acting for that company; that the defendant was a corporation located in Boston, and was a wholesale distributor of Pierce-Arrow automobiles; that at said time there was established a business relation between the Nixon company

and the defendant, but it was agreed by the parties that the relation was not that of principal and agent. The facts found further disclose that the Nixon company was in business for itself; that its treasurer carried on the business of the Nixon company and was held in high regard by both the plaintiff and the defendant and that neither, until after the transactions on which this action is based, had any reason to doubt or did doubt his integrity.

The following facts also appear: Nixon, on September 11, 1931, telephoned to the defendant that he had a prospective purchaser for one of its automobiles and asked to have an automobile sent to Lynn with a representative of the defendant to help him sell it. This was done by the defendant. The sale was not completed on that day and the representative returned to Boston, leaving the automobile with Nixon to be shown to the husband of the prospective customer that night. On the same day, after the representative had returned to Boston and reported to the defendant's manager, Nixon telephoned to the defendant's manager and asked what the price of the automobile would be to him. The price was given and Nixon said he would buy it and promised to send a check. The defendant's treasurer that night sent Nixon an invoice, Exhibit 2, which purports to show the Nixon company as a buyer of a motor vehicle at the price of $4,082.50 and bears the words "Settlement: Cash on Delivery $4082.50." On the next day the defendant received a post dated check and "because of delay in selling and paying for another car bought of Nixon Co. . . . the defendant's manager called Nixon" and directed him to return the automobile although Nixon said he could sell it. Nixon returned the motor vehicle but the defendant did not know at the trial what had become of the post dated check and it never sought to get the copy of the invoice back.

The finding of the trial judge shows that Nixon had the motor vehicle on a "trust receipt" on September 12, 1931, and again on September 28, 1931; that these "trust receipts" in the form set out in Exhibit 6 purport to create a restricted agency to sell motor vehicles in trust for the

defendant; that on September 24, 1931, Nixon came to the plaintiff's office, parked the motor vehicle where it could be seen from the office, went into the office and asked for a loan on a mortgage on the motor vehicle; that the assistant treasurer of the plaintiff consulted its manager and then asked Nixon for an invoice of the automobile and Nixon produced the invoice above referred to; that the assistant treasurer asked Nixon why the invoice was not stamped "paid" and Nixon replied that he had paid by check, but he offered no explanation why the invoice was not stamped "paid"; that, in the presence of the assistant treasurer, Nixon called his bookkeeper and asked her for the number of the check and then wrote on the invoice "Pd. by check #3082"; that the plaintiff made no attempt to communicate with the defendant; that the plaintiff's manager took the invoice, which the plaintiff retained until the trial in this action, went to the motor vehicle, which the assistant treasurer could see from the office window, and checked the serial and motor numbers on it with those on the invoice; that a note for $3,200 with a mortgage was then given the plaintiff by Nixon on behalf of the Nixon company, and the plaintiff gave Nixon its check for $3,200; that the mortgage was duly recorded; and that on October 3, 1931, Nixon came back and paid the note saying he thought he had sold the automobile. The mortgage was not discharged and is still undischarged of record.

Further, on October 7, 1931, Nixon came to the plaintiff's office, said that he had not sold the automobile and asked for another loan on the same motor vehicle, which was then parked within sight of the office. The plaintiff made the loan and Nixon gave the plaintiff a new note and mortgage for $3,200 which was duly recorded and, as before, he received the plaintiff's check for $3,200. This is the mortgage upon which the plaintiff bases its claim. The Nixon company then had the motor vehicle under a trust receipt dated September 28, 1931. On October 8, 1931, after the money had been advanced by the plaintiff, a man in the plaintiff's employ, whose business it was to check automobiles on which the plaintiff had lent money, while

checking other motor vehicles in the establishment of the Nixon company had his attention directed to this automobile by some one connected with the Nixon company, and this motor vehicle was also checked as being in Nixon company's sales room on October 26 and November 16, 1931. The course of dealing between the Nixon company and the defendant had been that the defendant had accepted checks of the Nixon company post dated in the expectation that before the check became due Nixon's customer would pay for the automobile, the trust receipt not being used in such cases. The defendant knew that the Nixon company financed the purchase of motor vehicles but had no knowledge of its doing this through any company except the Commercial Investment Trust, and in all cases put in evidence where the Nixon company bought motor vehicles with the aid of the Commercial Investment Trust the defendant was a party to the transaction. In practice there were only three ways in which the defendant allowed its motor vehicles to go out to dealers: (1) by dealers signing the so called trust receipt; (2) by sending the automobile in charge of its own man; and (3) by delivery on purchase and payment. The defendant bought the motor vehicle in question in August, 1931, and had title to it. The Nixon company acquired no title from the defendant and no express authority to mortgage the motor vehicle. "Both plaintiff and defendant in dealing with Nixon acted in good faith, without knowledge of the claims of the other until after the transactions set forth took place, and the plaintiff parted with its money, paid to the Nixon company on the mortgage notes, without actual knowledge of any claim of the defendant on the car."

The plaintiff's contention is that the judge erred in not ruling that under the facts the Nixon company had either as an apparent agent or as an apparent owner authority to mortgage the motor vehicle, which the defendant by reason of its conduct is estopped to deny, and that, the plaintiff and the defendant being equally innocent, the loss should fall on the defendant.

It is plain on the facts found that the plaintiff on Septem-

ber 24, 1931, and again on October 7, 1931, lent the Nixon company $3,200 in the mistaken belief that the Nixon company was the owner of the motor vehicle mortgaged through purchase of it from the defendant on September 11, 1931. This apparent ownership at the time the loan was negotiated and made, outside the fact that Nixon was then in actual possession of the motor vehicle mortgaged, had for its support the declaration of Nixon that he had bought the motor vehicle and paid for it by a check which had been sent to the defendant and was numbered 3082. The plaintiff had before it as evidence of the Nixon company's title, in addition to Nixon's physical possession of the motor vehicle and to his claim of title to it through purchase, the fact that he produced an invoice, issued by the defendant, which bore on its face the name of the purchaser, the Nixon company, the price, $4,082.50, and the words "Settlement: Cash on Delivery $4082.50." There were no words on the invoice to show that there had been payment on delivery or payment otherwise. The plaintiff observed that the invoice did not show that the provision as to "settlement" had been satisfied and permitted Nixon to write on the invoice "Pd. by check #3082." It is manifest this addition to the invoice added nothing to the assertion of Nixon that he "had paid by check" the price of the motor vehicle conditionally sold him by the defendant. The plaintiff knew of the defendant and of its place of business, which appeared as a heading on the invoice, and it presumably could have ascertained from the defendant what interest, legal or other, the Nixon company had or had acquired through the invoice or otherwise, to sell or mortgage the motor vehicle described in the invoice in the interest of the defendant or to sell or mortgage it in the Nixon company's own interest. The plaintiff did not avail itself of this means of checking the statement of Nixon and consequently must be held to have relied on his declaration that the Nixon company had bought and paid for the motor vehicle.

It is plain that the Nixon company was not the legal owner of the motor vehicle mortgaged to the plaintiff to secure a loan to itself, and equally plain that the defendant was the

real owner of it at the time it was mortgaged.  Under the terms of the invoice the Nixon company as bailee had possession of the motor vehicle, with the right to have title on payment of the price stated in the invoice, but that did not, in the absence of fraud or collusion to obtain a false credit as an apparent owner of the motor vehicle, enable the Nixon company by sale or mortgage to transfer the title to another. The fact that the plaintiff lent the Nixon company the money and took the mortgage in good faith will not avail, as it is the duty of the purchaser or mortgagee to see that the vendor or mortgagor has a good title to the property which he undertakes to sell or mortgage.  *Coggill* v. *Hartford & New Haven Railroad*, 3 Gray, 545, 550.  *Gilbert* v. *Thompson*, 3 Gray, 550.

If it be assumed that, when the motor vehicle was mortgaged to the plaintiff to secure a loan to the Nixon company, the latter company was an agent to sell motor vehicles owned by the defendant, with the restrictive authority conferred on it by the "trust receipt," and if it be assumed that the Nixon company had, contrary to the terms of the "trust receipt," apparent authority to mortgage the motor vehicle entrusted to it by the defendant, it is plain, as matter of law, that the plaintiff, in defence of its claimed title in mortgage, could not set up an apparent authority in the Nixon company if the circumstances of the transaction were such as to put it on inquiry as to the terms of the actual authority of the Nixon company to mortgage.  The right of the plaintiff to set up the apparent authority of the Nixon company to mortgage was further limited by the rule that a person cannot set up an apparent authority unless he relied on it when he entered into the transaction; and also by the rule that a person who deals with an agent not as agent but as principal cannot set up an apparent authority which the agent may be said to have.  *Mahony* v. *East Holyford Mining Co.* (*Ltd.*) L. R. 7 H. L. 869, 894. *A. L. Underwood, Ltd.* v. *Bank of Liverpool*, [1924] 1 K. B. 775, 798.  In the case at bar the plaintiff dealt with the Nixon company as a principal and not as an agent with broad power to sell or mortgage property in the agent's pos-

session. It did not rely upon the "apparent agency" of the Nixon company and was in no degree deceived by any act of the defendant. We find no ground in the circumstances of the transaction upon which the plaintiff can rest an estoppel of the defendant to assert its title to the motor vehicle. The cases of *Tripp* v. *National Shawmut Bank of Boston,* 263 Mass. 505, *Simons* v. *Northeastern Finance Corp.* 271 Mass. 285, and *Denno* v. *Standard Acceptance Corp.* 277 Mass. 251, cited by the plaintiff in support of its contention that the plaintiff had acquired a title in mortgage superior to that of the defendant owner, are distinguishable from the case at bar for the reason that in those cases the plaintiff, the buyer, was under no obligation, as here, to investigate the dealer's title as there was nothing, as there was here, to put him on inquiry.

*Order, "Report Dismissed," affirmed.*