285 So.2d 690 (1973)
H.S.A., INC., a Dissolved Florida Corporation, Appellant,
v.
HARRIS-IN-HOLLYWOOD, Inc., Appellee.
No. 72-1053.
District Court of Appeal of Florida, Fourth District.
November 2, 1973.
Rehearing Denied December 17, 1973.
*691 Harry A. Gaines of Meyer, Leben, Fixel & Gaines, Hollywood, for appellant.
James M. Norman and Ben Weaver of Kirsch Druck Mills & Jones, Fort Lauderdale, for appellee.
MAGER, Judge.
This is an appeal by H.S.A., Inc., defendant below, from a final judgment entered in favor of Harris-in-Hollywood, Inc., plaintiff below, wherein plaintiff recovered a real estate commission based upon defendant's breach of an oral contract.
Some of the salient facts reflected by the record are as follows. On December 8, 1969, one Selma J. Harris, a real estate broker and president of the plaintiff corporation, approached one Dr. Myron I. Segal concerning the sale of a medical building. The meeting took place in Dr. Segal's office which was located in the medical building in question at which time Harris inquired as to whether "his" (Dr. Segal's) building was for sale. The parties had apparently known each other for many years and Harris' visit to Segal which was unsolicited was based upon information that Harris received from another source.
The testimony of Harris and Segal is somewhat conflicting as to Segal's response to Harris' inquiry about the availability of the medical building. Segal indicated that "it might be for sale"; Harris testified that Dr. Segal said "that his building was for sale". In any event, a figure of $250,000.00 was mentioned by Dr. Segal and other details concerning the building as well as Harris' commission were discussed.
Based upon the discussions that ensued at this meeting of December 8, plaintiff contended that the parties had thereby entered into an open oral listing contract whereby Harris was to procure a purchaser ready, willing and able to purchase the subject property for $250,000.00.
There were some subsequent contacts between the parties including the furnishing of financial data by Dr. Segal's accountant to Harris concerning the building. Segal *692 admitted that the financial information was furnished by his accountant pursuant to his instructions and that such information was furnished by Segal after having ignored many of Harris' phone calls and "after much persistence on Mrs. Harris' part."
On April 8, 1970, Harris arranged a meeting with Dr. Segal and one Arthur Siegel (no relation), the latter having expressed an interest in purchasing the subject property. At this meeting the parties inspected the premises. Subsequently, after having been advised of Siegel's willingness to purchase the building in question, Harris prepared an offer on behalf of Mr. Siegel in the form of a letter dated May 8, 1970, addressed to Dr. Segal, c/o H.S.A., Inc. Several phone calls ensued and finally, on May 15, 1970, Dr. Segal called Harris and advised her that he and his partners were going to meet on May 21 and that Harris would be advised of their decision on May 22.
After receiving a telephone message from Dr. Segal's secretary conveying a negative answer to the offer of May 8, a meeting was arranged between Harris and Segal, at which time Segal advised Harris that his partners refused to go along with the sale. As a result of the foregoing Harris brought an action to recover a real estate commission against H.S.A., Inc.
The testimony in the record reflects that during the conversations between Harris and Segal no inquiry was made nor discussions had about who actually owned the building. Harris indicated that Dr. Segal had mentioned two other "associates or partners" on the day of the Siegel visit to the building but never indicated that it was necessary to secure the partners' approval before a sale could be effectuated. The testimony is fairly clear to the point that as far as Harris was concerned Segal owned the building and that she was dealing with him on that basis.
It was not until Harris had prepared to submit Mr. Siegel's offer to Dr. Segal (letter of May 8, 1970) that Harris learned that H.S.A., Inc. was the record owner of the building.[1] It is fair to conclude from the testimony of Harris that up until the date she ascertained the record owner of the building, she assumed Dr. Segal was the owner and had dealt with him on the basis that he was the owner.
A review of the testimony in the record as reflected in the aforementioned recitation set forth above in light of the points involved in this appeal reflects that the judgment entered atainst H.S.A., Inc. was predicated upon the theory that a principal (H.S.A.) is bound by the acts and contracts within the apparent authority of its agent (Dr. Segal).
At the outset it should be observed that there is no question raised by the parties as to the authority of a broker to recover a commission based upon an oral contract of employment. See 5 Fla.Jur. Brokers § 15. Nor is there any dispute with the general proposition that a broker employed to find or procure a purchaser is entitled to a commission if the broker produces a purchaser who is ready, able and willing to purchase on the terms and conditions specified in the contract of employment McAllister Hotel v. Porte, Fla. 1957, 98 So.2d 781; 5 Fla.Jur., supra, sec. 42.
The thrust of this appeal centers on the applicability of the doctrine of apparent authority under the facts and circumstances of this case. In Fidelity & Casualty Co. v. D.N. Morrison Const. Co., 1934, 116 Fla. 66, 156 So. 385, 387, the Supreme Court of Florida in discussing the doctrine of "apparent authority" stated:
"Apparent authority is such as the principal knowingly permits the agent to assume *693 or which he holds the agent out as possessing. This rule is sometimes spoken of as the rule of agency by estoppel, and embraces three primary elements. They are: (1) A representation by the principal; (2) reliance on that representation by a third person; and (3) a change of position by the third person, in reliance upon such representation. To bring a case within the rule, all three elements must be present. 2 C.J. Agency, §§ 72 and 212.
"In section 213, same title in Corpus Juris, we are told that it is essential to the application of the above general rule that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts, and, acting in good faith, had reason to believe that the agent possessed the necessary authority."
Although the record reflects: conduct on the part of Dr. Segal that may be properly interpreted as giving rise to employment of Harris to find a purchaser ready, willing and able, the evidence also reflects the absence of conduct on the part of the principal (H.S.A.) which would denote the holding out of its agent as possessing the authority to act on its behalf; and the absence of conduct denoting that the agent (Dr. Segal) was acting on behalf of a known principal. Significantly, the record unmistakably demonstrates that Harris never knew of the existence of any principal or was ever given any reason to believe that Dr. Segal was the agent of the principal. Harris, therefore, could not be relied on any representation made by Dr. Segal as to his principal; Harris never acted in reliance upon any principal-agent relationship; Harris dealt with Dr. Segal as if he were the principal and owner.
In order to apply the doctrine of apparent authority it must be demonstrated that the principal held the agent out to the public as being possessed of the requisite authority and that the third person knew of this holding out and relied thereon to that third person's detriment. Fidelity & Casualty Co. v. D.N. Morrison Const. Co., supra. See also American Lad. & Scaf. Co. v. Miami Vent. Awn. Mfg. Co., Fla. App. 1964, 161 So.2d 699; Mercury Cab Owners' Association v. Jones, Fla. 1955, 79 So.2d 782; Stiles v. Gordon Land Co., Fla. 1950, 44 So.2d 417; T.G. Bush Grocery Co. v. Conely, 1911, 61 Fla. 131, 55 So. 867; Blount v. Tomlinson, 1909, 57 Fla. 35, 48 So. 751; Perper v. Sonnabend, 5 Cir.1955, 221 F.2d 142; 1 Fla.Jur. Agency § 35; Restatement of the Law, 2d, Agency, vol. 1, sec. 8.
A corollary to the essentiality of the third party's reliance upon the outward representations is the rule that the doctrine of apparent authority is not applicable where the third party deals with the agent not as agent but as principal. In this regard it is pointed out in 3 Am.Jur.2d Agency, pp. 477-8:
"In order to establish that an agent had the apparent authority to do the act in question, it must be established (1) that the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal. Manifestly, a party dealing with an agent must prove that the facts giving color to the agency were known to him when he dealt with the agent, and that he believed the agent was acting within his authority; if he has no knowledge of such facts, he does not act in reliance upon them and is in no position *694 to claim anything on account of them. For this reason, it is plain that one who deals with an agent as principal cannot set up the agent's apparent authority, on which he did not rely, so as to establish rights against the principal." (Emphasis added.)
In an annotation appearing in 95 ALR 1319, entitled "Right of One Who Deals With Another As Principal to Set Up Latter's Apparent Authority As Agent," the author points out, at p. 1320:
"... The cases are virtually unanimous in support of the rule that one who, whether with or without information of the existence of an agency, deals with an agent not only as the nominal, but as the real, principal, is not entitled to hold the true principal to the extent of a merely `apparent,' or `ostensible,' not actual, authority of the agent, as agent,  unless, of course, the principal in some way adopts the transaction, or claims its fruits under circumstances making it unjust that he should not be bound thereby. This rule is applied irrespective of whether the agent is to be classified as general or special, for in neither case has any reliance been placed upon his apparent authority. The entire doctrine concerning the apparent authority of agents rests upon estoppel; hence one who has contracted without reference to the mere appearance of authority is in no position to rely thereon as a means of charging a principal whose acts have not otherwise bound him... ."
In Commercial Credit Corp. v. Stan Cross Buick, Inc., 1961, 342 Mass. 622, 180 N.E.2d 88, 91, the Supreme Judicial Court of Massachusetts similarly observed:
"... The defendants' contention that Lloyd had apparent authority to sell the car is answered by the rule that a third person `cannot set up an apparent authority unless he relied on it when he entered into the transaction; and also by the rule that a person who deals with an agent not as agent but as principal cannot set up an apparent authority which the agent may be said to have.' Essex County Acceptance Corp. v. Pierce-Arrow Sales Co. of Boston, 288 Mass. 270, 276, 192 N.E. 604, 607, 95 A.L.R. 1314. Restatement 2d: Agency, §§ 8, 27. There is no evidence that Lloyd professed to be acting as an agent in the sale of the car or that Stan Cross believed that Lloyd was other than the owner. In such circumstances the concept of apparent authority is not pertinent and the requested rulings regarding it were properly refused."
We are, therefore, of the view that on the basis of the testimony in the record before us the conduct, actions and activities of Dr. Segal and H.S.A., Inc. were not such as to create a principal-agent relationship or a reliance thereon by Harris. Our holding relates solely to the liability of H.S.A. as a "principal" for the acts of its "agent" (Dr. Segal). We are not concerned with nor do we decide the liability of Dr. Segal who is not a party herein. See, for example, Keyes Company v. Moscarella, Fla.App. 1969, 223 So.2d 83.[2]
Accordingly, the final judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
CROSS, J., and DRIVER, B.J., Associate Judge, concur.
NOTES
[1] Although it later developed that Dr. Segal was president of H.S.A., Inc. the record reflects that Harris did not know of the corporate existence at the time she dealt with Dr. Segal nor was she aware of the fact that Dr. Segal was president of the corporation.
[2] Although we have considered all of the points involved in this appeal in view of the decision reached herein we find it unnecessary to comment thereon.