## HARTLINE v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N.*

### No. 8049.

Circuit Court of Appeals, Fifth Circuit.

June 8, 1936.

E. C. Johnson, Morris E. White, and O. K. Reaves, all of Tampa, Fla., for appellant.

Gates Ivy and R. W. Shackleford, both of Tampa, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The declaration of the plaintiff-appellant was dismissed on demurrer. It sought recovery in three counts on a contract of accident insurance because of the accidental death on December 22, 1934, of the insured, her husband; she being named beneficiary. The first count sets up that on December 14, 1934, the insured was solicited by a named agent of the defendant-appellee to take insurance described fully in a prospectus exhibited to insured and made a part of the declaration. "Plaintiff avers that said Hartline (insured) having been fully informed of the terms and provisions of said Form 100-A policy, the subjects and contingencies insured against, the amount of said insurance, the plan thereof and the term each premium would carry the same,

*Rehearing denied July 16, 1936.

agreed with defendant through its said agent to, and then and there did, take and accept and defendant then and there agreed to issue and deliver to said Hartline such a policy, which among other things insured him against accidental death in the sum of $5,000." The premium agreed on was $19 to carry the insurance from December 14, 1934, to April 1, 1935; $10 being paid down and the balance was paid on December 22, a few hours before Hartline was killed. The receipt which the agent gave contains these printed words, "Should the Company decline to issue the insurance applied for I hereby agree to return the above sum to applicant," and "This carries your insurance from date on which policy is issued and delivered until April 1st, 1935," and written below is this, "Balance on 100-A policy written on Dec. 17, 1934." The declaration also exhibits a written application for the insurance made December 14, which contains this: "Do you agree that this application shall not be binding on the Association until accepted by the Association, nor until policy is accepted by the insured while in good health and free from injury? Yes." The declaration avers that no medical examination was required, and that the agent said he was authorized to accept the application for the association, and did then and there accept it, and agreed that, in consideration of the premium paid, Hartline was at once insured, and that a policy would be issued and delivered in due course. The first count thus rests upon the oral agreements of the agent. The second count adds that the application and premium were forwarded to the home office of the association in another state and received on December 21st, and a policy would have been issued but for a telegram from the agent advising of insured's death. The third count adds that the application was accepted and approved in the home office prior to insured's death.

■ The second and third counts go on what occurred at the home office, assuming that the soliciting agent had no authority to contract. The third count asserts acceptance of the application, which would have closed the contract, the terms of insurance definitely appearing from the application, and the form of policy applied for; and the actual issuance of a policy would be unnecessary except for the stipulation in the application that it should not be binding "until policy is accepted by insured while in good health and free from injury." This could hardly refer to the acceptance of the form of policy manifested in applying for it, but it naturally means an acceptance after the physical receipt of the particular policy when issued. As none was ever issued so as to be accepted in that sense, the transaction so far as it rests on action at the home office never became an existing insurance before the death. The second and third counts were rightly held to show no cause of action.

■ The first count rests, not on action at the home office, but on the theory that the agent was, for the purpose of contracting, the association. If such was his authority, we are of opinion that, notwithstanding the contemplated written application and policy to be issued in pursuance of it, he could orally agree on a present insurance in consideration of the premium then paid. He could also interpret the provision of the application form above quoted by saying that it was met by his accepting the application then and there and by the insured's accepting the policy as agreed on. The application does not contain any notice of limitation of the authority of the agent. The printed form of receipt does indicate that the Company might decline to issue the insurance, in which case the premium was to be returned by the agent, but this does not necessarily mean that this agent could not confirm ad interim insurance or accept the application if such was his authority in fact. Besides the printed part of the receipt form is offset by the specially written notation, "Balance on 100-A policy *written on Dec. 17, 1934,*" which indicates a closed transaction. It all depends on the authority of this agent. On that point the declaration is very unsatisfactory. The allegation of an agreement by agent above quoted, standing alone, would imply an assertion of authority to do what was done, for, unless there was authority, there could be no agency. Pacific Mutual Life Ins. Co. v. Barton (C.C.A.) 50 F.(2d) 362. But the count proceeds to say that the so-called agent "advised Hartline that he was authorized" and that the premium receipts had the word "agent" printed on them, which implied that the person having them could contract, and that Hartline "believed and relied on the belief

that the agent was authorized to accept said application in behalf of the defendant." In a suit at common law on demurrer, pleadings are construed against the pleader. We do not think the word "agent" on the premium receipt form imported an authority to do more than receive money on the terms stated in the form. The agent's assertion of authority to contract would not prove it, nor would Hartline's believing his assertion help. Taken altogether, the count does not allege an authority in the agent to contract, but only a credited assertion of authority. It was properly stricken on demurrer. But oral contracts of insurance are valid in Florida, and we desire to leave the matter open for a better suit if a case can be truthfully alleged of an ad interim or a final contract of insurance orally made by due authority of the association and in force at insured's death.

Judgment affirmed without prejudice as to the first count.