**A. L. PERPER, Appellant,**

v.

**Abraham M. SONNABEND and White-hall Hotel & Surf Corporation, Appellees.**

**No. 15219.**

United States Court of Appeals, Fifth Circuit.

April 6, 1955.

Rehearing Denied May 17, 1955.

er ready, able and willing to purchase the hotel in Palm Beach on terms which he set out in his complaint. In his testimony, as stated by him in his brief here, he said the agreement was "that if plaintiff would find a purchaser on terms satisfactory to the defendant, that he would be paid a commission." This testimony is important because it does not support the contention that he was given the full set of terms on which to negotiate at the outset, but indicates that any offer would have to be acceptable to ("be satisfactory to") the defendants.[1]

The testimony so far as it is material to a decision on appeal, may be said to make the following prima facie case:

Clarence J. Brown, Jr., Miami, Fla., Hylan H. Kout, Montague Rosenberg, Miami Beach, Fla., for appellant.

Frank A. Howard, Jr., H. Reid DeJarnette, and Dixon, DeJarnette, Bradford & Williams, Miami, Fla., for appellees.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and DAWKINS, District Judge.

TUTTLE, Circuit Judge.

Appellant here seeks the reversal of a judgment of the trial court based on a verdict he directed against appellant, a real estate agent, suing for his commission for services he claimed he performed for the defendants relating to a sale of their hotel in Palm Beach.

Perper, the plaintiff, alleged he entered into an oral agreement with defendants that he would be entitled to a 5% commission if he found a purchas-

Plaintiff talked with Sonnabend, who was the manager of the hotel and who was also one of five trustees of the General Real Estate Trust, the owner of the property at the time in question and the owner of approximately 15% interest in the trust; the General Real Estate Trust had been succeeded by defendant, a Massachusetts corporation; Sonnabend purported to authorize Perper to seek a purchaser of the hotel on certain terms for delivery before January 1, 1949; if such purchaser was found who offered terms acceptable to defendant, Perper was to receive a commission; Perper found parties who made offers which were rejected by Sonnabend, and then on November 11, 1948, Perper made modified suggestions in a letter in which he urged Sonnabend "to finally make this deal;" Sonnabend replied on November 15th, calling particular attention to the fact that any deal would have to be acceptable to the other trustees;"[2] that Perper there-

1. This explains the statement in the court's order on pre-trial hearing: "Plaintiff claims on oral agreement with Defendants that Plaintiff would produce purchaser for property known as Whitehall Hotel, ready, able and willing to purchase on terms acceptable to Defendants, for a commission of 3% upon the same price agreed on.

"Defendants admit Abraham M. Sonnabend was authorized to negotiate for the sale of the Whitehall Hotel but not to conclude any sale without having sub-

mitted the negotiations to their other associates."

2. "As stated to you when you were in Boston, I do not even know at this time if Mr. Walter Jacobs' offer of $2,250,000.00 will be acceptable to my associates. I am willing, however, to recommend this price if a sufficiently large cash payment is made and satisfactory terms on a second mortgage are offered.

"The proposals submitted by you on behalf of Mr. Jacobs to date have not been satisfactory. There is a possibility that

after spent time and incurred expense in attempting to work out a release of a part of the first mortgage on a golf course that belonged to the same owners; then Perper had further telephone conversations with Sonnabend in which a set of terms were reviewed and Sonnabend said "everything is all right;" thereafter, on December 10th, a meeting was held at Palm Beach attended by Jacobs, the prospective purchaser, his lawyer, Sonnabend and one other trustee of the trust with the understanding between Perper and Sonnabend that the deal would be closed; upon that occasion Sonnabend said they would deliver the property after the season in 1949, and not on December 10th; whereupon the meeting was abruptly terminated.

There was no testimony from any source except that attributed to Sonnabend that he had authority to accept the terms of a contract of sale on behalf of the defendant. Sonnabend, called by plaintiff as a witness, testified that he had not represented that he had such authority, and the defendants point to the letter of November 15th,[3] as showing that plaintiff was on notice that Sonnabend had no authority to bind the defendant by accepting the offer or terms of proposed sale.

The trial court directed a verdict for the defendants, at the conclusion of the plaintiff's evidence.[4] Judgment was entered on this verdict and appellant here complains of this judgment.

The primary question here presented is whether the trial court erred in taking the case away from the jury because of the failure of the plaintiff to offer sufficient evidence to make a prima facie case to support his complaint. We are convinced the court did not err, and we find that the court clearly and adequately set forth the correct basis of its decision.

■ The burden was on the plaintiff to prove his case. This included proof of the authority of Sonnabend to act for the defendants in fixing or accepting the terms of the alleged sale. Perper's own testimony was to the effect that he had to find a purchaser ready, able and willing to buy on terms satisfactory to defendants. The only proof that he had performed this obligation was his testimony that Sonnabend himself agreed to these terms, and that Sonnabend claimed to have the authority to make the deal. An agent's authority cannot be proved by his own conduct or extrajudicial statements.[5] Moreover, the written evidence contained in the letter

a downpayment of $400,000.00 might be acceptable if proper arrangements can be made with reference to this season's operations and more particularly in regard to paying accrued expenses in connection with this season's operations."

3. See Note 2, supra.

4. The court's instruction to the jury was as follows: "Gentlemen, on motion of the defendants, the Court will direct the jury to find a verdict in favor of the defendants. Before the plaintiff would be entitled to recover in this case, he must have established that the sellers approved the terms, and conditions of the offer to purchase. There is no proof in this case that the defendant Whitehall Hotel and Surf Corporation ever approved the terms and conditions of the sale for which the plaintiff claims a commission. In order to be entitled to a commission under the law, it was neces-

sary that the plaintiff produce a purchaser not only able, ready and willing to purchase but it must have been on such terms and conditions as were submitted to and accepted by the seller, the defendant Whitehall Hotel and Surf Corporation. There is no proof in this case that the terms and conditions of the offer to purchase and the terms and conditions thereafter were ever submitted to and approved by the defendant corporation. The defendant Sonnabend is not liable because of an unauthorized act on his part in assuming to act as agent because he disclosed to the plaintiff his full authority and the scope of his authority."

5. Durand Motor Co. of New Jersey v. Georgia Florida Motor Co., 5 Cir., 18 F. 2d 95; Hartline v. Mutual Benefit Health & Accident Association, 5 Cir., 84 F.2d 21.

of November 15th contradicts any purported assertion by him of authority to accept the trade. There can be no reliance here on apparent authority because there is no evidence that any of the other trustees of the trust ever represented Sonnabend to plaintiff as having any authority to make the final terms of a sale. The rule of law applicable to apparent authority is the same in Florida and in most other jurisdictions. For the principal to be bound by acts of an agent not actualy authorized to perform an act for the principal there must be a "holding out" of the alleged agent by the principal.[6] There was no such holding out in this case.

■ Appellant strongly urges that appellees are foreclosed from defending on the ground of lack of Sonnabend's authority because (1) he contends that the trial judge's findings on pre-trial concluded the issue, and (2) he contends that any such defense was waived by defendants in the opening statement of their counsel to the jury.[7] We think there is no merit in either of these contentions. As to the first, it appears that the finding at the pre-trial conference that defendants admitted that Sonnabend "was authorized to negotiate for the sale of the hotel, but not to conclude any sale without having submitted the negotiations to their (sic) other associates" is not susceptible of the construction that defendants admitted that Sonnabend had the authority to "conclude" a sale, i. e., accept the terms of a sale, without reference to his associates. This

is made even more clear when we consider the language here with the earlier pre-trial statement of the trial court that "Plaintiff claims on oral agreement with Defendants that Plaintiff would produce purchaser for property known as Whitehall Hotel, ready, able and willing to purchase *on terms acceptable to Defendants,* for a commission of 3% upon the sale price agreed on." (Emphasis supplied.)

■ As to the second contention mentioned above, whether counsel is bound, at the peril of losing his client's case, to state all of the defenses he intends to rely on in his opening remarks to the jury, which question we do not decide, it suffices to state that the defense that there was no meeting of minds on the one term relating to the time of delivery was one of the defenses counsel for defendants did call to the attention of the jury in his opening statement. It is part of that defense to rely on a failure by the plaintiff to prove the agent's authority to make a binding agreement for delivery at a time and under terms not acceptable to defendants. We do not think the defendants' counsel waived the benefits of the defense of lack of authority.

■ The remaining specifications of error need not be dealt with more fully than to say that as to one of them the court did not err in ruling out testimony of conversations between plaintiff and a lawyer for defendants, because there was no evidence of the lawyer's authority to bind the defendants any more than there

---

6. Hartline v. Mutual Benefit Health & Accident Ass'n, 5 Cir., 96 F.2d 174; Fidelity & Casualty Co. v. D. N. Morrison Const. Co., 116 Fla. 66, 156 So. 385.

7. This contention by appellant is set out by him in his brief as follows:
"In his opening statement, counsel for the Defendants limited his contentions to the following: (1) That the contract of listing was one to effect a sale; (2) That a different price was agreed upon for December delivery as distinguished from May delivery: (3) That the purchasers were able financially to purchase the property."

The ground numbered (2) is amplified by appellant in his "Statement of the Case" as follows:
"(b) The second contention by the Defendants was that the principal and only thing that prevented there being a sale of the property to the purchasers was the question of the date of delivery, and more particularly that the proposition given to the purchasers was $2,500,000.00 with delivery in December, 1948, and $2,250,000.00 with delivery of the property in May of 1949."

**146**

was as to Sonnabend; and as to the second, it is immaterial whether the court permitted plaintiff to amend his petition to raise the amount sued for, because we have held that he was not entitled to recover even the smaller amount.

The judgment is affirmed.