375 So.2d 903 (1979)
Audrey RUSHING, Gerolta King and Cedral Kenney, Appellants,
v.
Thomas Jefferson GARRETT, Jr., Appellee.
No. LL-89.
District Court of Appeal of Florida, First District.
October 17, 1979.
*904 George Ralph Miller of Andrews & Miller, DeFuniak Springs, for appellants.
Gillis E. Powell, Jr., Crestview, for appellee.
LARRY G. SMITH, Judge.
Appellants appeal from a final judgment which ordered specific conveyance of their interest in certain land in Walton County based upon an alleged binding agreement formed by correspondence between the parties' respective attorneys during the course of a partition suit concerning the property. We find error and reverse.
Appellants are the owners of an undivided three-fourths interest in the real property in question. Appellee, owner of the remaining one-fourth undivided interest, filed suit in the Circuit Court for partition. The court below found that a series of letters written by appellants' and appellee's counsel during the course of the partition suit constituted a binding contract for the sale of appellants' interest in the property to appellee.
The correspondence was initiated by appellants' attorney who addressed a letter to appellee's attorney on October 4, 1977 suggesting that a private sale would benefit all parties, and suggesting that an offer be made if appellee was interested. On October 10 appellee's attorney addressed a letter to appellants' attorney stating,

*905 "... the purpose of this letter is to advise you that we hereby offer to purchase your clients' interest in the property in the above case, being 30 acres, for the sum of $15,000.00. This amount will be paid in cash at the time of closing."
There being no response, on October 24, 1977 appellee's attorney again wrote to appellants' attorney inquiring whether he had gotten in touch with his clients concerning the offer. On October 27, 1977, appellants' attorney wrote to appellee's attorney, the following one sentence letter:
"My clients have indicated they will buy or sell the property for $600.00 per acre."
On November 30, 1977 appellee's attorney wrote to appellants' attorney as follows:
"My client accepts your offer to sell as specified in your letter to me of October 27, 1977, and hereby agrees to pay your clients $600.00, per acre for the thirty (30) acres. Please advise as to the terms of payment and when do you expect we can finalize the matter."
Appellee's attorney next wrote to appellants' attorney on December 22, 1977 confirming a telephone conversation of the same date, and advising that his client had the $18,000.00 purchase price for appellants' property, and that: "We wish to finalize this matter immediately". The letter further advised that the October 27 offer had been accepted, and set a deadline for January 3, 1978 for the filing of suit for specific performance absent any further response. There being no favorable response, appellee filed his amended complaint in the partition suit, demanding specific performance, based on the allegation that the series of letters formed a binding contract.
The appellee, in this court as well as in the court below, proceeds upon the assumption that an attorney employed by a party in litigation such as the instant case is, ipso facto, given carte blanche authority to execute a written agreement for the conveyance of property, thereby satisfying the statute of frauds, Section 725.01, Florida Statutes. The assumption of the existence of such unlimited authority appears contrary to the law that has come to our attention in our review of the subject, and appellee has not cited any case from Florida or other jurisdictions stating this view.
The authority of an attorney to represent a party in litigation extends to negotiations for settlement, and in some contexts a settlement agreement entered into by an attorney is enforceable against the party. See 4 Fla. Jur. 2nd, Attorneys At Law, Section 135  Compromise and Settlement; Rule 1.030(d), Florida Rules of Civil Procedure. But a party seeking judgment on compromise and settlement has the burden of establishing assent by the opposing party. Unauthorized assent manifested by a party's attorney is insufficient. Goff v. Indian Lakes Estates, Inc., 178 So.2d 910 (Fla. 2nd DCA 1965). This is so because an attorney employed merely to handle a litigated cause is not authorized to stipulate for the entry of a final decree on the merits. Goff v. Indian Lakes Estates, Inc., supra, footnote 2, citing Kramer v. City of Lakeland, 38 So.2d 126 (Fla. 1948); Bursten v. Green, 172 So.2d 472 (Fla. 2nd DCA 1965). See also Cross-Arrow Corp. v. Cross-Arrow Service Corp., 326 So.2d 249 (Fla. 3rd DCA 1976).
In the case under consideration by giving effect to the correspondence between the attorneys as a binding agreement for conveyance of appellants' land, the trial court effected a conclusion on the merits of the partition litigation. However, we have found no Florida authority for the proposition advanced by appellee that appellants' attorney, by virtue of his representation of appellants in the partition suit, had authority to contract for sale of his clients' interest in the property. No proof on this issue was presented by appellee.[1] We note in the *906 record a statement by appellants' counsel at the hearing before the court as follows:
"Mr. Miller: I am not raising that, I am not raising lack of authority as a defense; I am saying my client had the right to change their mind at any time until they signed the agreement."
We note further, however, that when appellee's counsel attempted to introduce the letters between them into evidence, which occurred when appellants' counsel was called as a witness by appellee, he stated his objection to the introduction of the letters as follows:
"Mr. Miller: That the letters constitute settlement negotiations between Mr. Powell and myself; and further, that I had no right to bind my clients, nor do my letters indicate so."
Although the two statements by appellants' counsel appear to be somewhat inconsistent, giving effect to both statements a fair interpretation is that he had authority to submit the proposed "buy or sell" $600.00 per acre price, but his communication was intended to be in furtherance of settlement negotiations, and the attorney had no authority to execute a binding contract for sale of his clients' property.
In Florida, it was established at an early date that the authority of one who has assumed to act as agent of the owner in the execution of what purports to be a complete and binding executory contract for the sale of land must be established as in any other case of agency. The authority of an agent to enter into such an agreement for the sale of lands, on behalf of his principal, may be created by parole evidence, and may also be implied from the acts, conduct, and circumstances, including the relations of the parties. Smith v. Shackleford, 92 Fla. 731, 110 So. 358 (1926). We find no case in Florida which has specifically applied the same principles to the relation of attorney and client, but we find authority from other jurisdictions quite explicit on this point.
In Miller v. Mueller, 28 Md. App. 141, 343 A.2d 922 (1975), it was held that the retention of an attorney for the purpose of settlement which anticipated a sale of real estate in which both parties had an interest did not constitute any implied authority on the part of defendant's attorney to enter into a binding contract in behalf of his principal, that the evidence supported a finding that the attorney did not have actual authority to enter into a binding contract for sale, and that the evidence was insufficient to show any apparent authority on the part of the attorney. The applicable law on the subject was stated by the court in part as follows:
"The mere retention of an agent, broker or attorney, to procure a purchaser of real estate, or to negotiate the terms of a real estate transaction, does not confer upon the agent the implied authority to make a contract of sale. (citations omitted).
* * * * * *
"These cases are dispositive of the contention that O'Ferrall, as an agent, had the implied authority to bind Mrs. Mueller to a contract.
* * * * * *
"Apparent authority may arise when the actions of the principal, reasonably interpreted, cause a third person to believe in good faith that the principal consents to the acts of the agent. Apparent authority also may arise when the principal knowingly permits the agent to act in a certain manner as if he were authorized. The action or manifestation of authority giving rise to the reliance must be that of the principal, and the reliance by the third person on the action or manifestation of authority must be reasonable. (citations omitted)
* * * * * *
"... As with implied authority, the mere retention of an attorney to negotiate a settlement, without any other action on the part of the principal, does not create the apparent authority of the *907 agent to execute a contract imposing new liabilities or burdens on his client. (citations omitted) Since, in the absence of express authority, an attorney has no implied authority to execute a contract for the sale of real estate binding on his client, it cannot be said that Mrs. Miller acted reasonably if her reliance on O'Ferrall's authority was based solely on his status as Mrs. Mueller's attorney..." (343 A.2d at pages 926, 927)
Although the factual situation in Miller v. Mueller, supra, is dissimilar,[2] the controlling principles are the same. In that case, as here, the plaintiff's reliance upon the authority of the defendant's attorney to bind his client to sell her interest in real property was based solely upon his status as defendant's attorney. In the Maryland case, as here, there was no proof of a written general power of attorney, no proof of any representations by defendant to plaintiff evidencing general authority on the part of her attorney to contract in her behalf, and no evidence that defendant by her actions knowingly permitted or tolerated her attorney to act as though authorized to execute a binding contract in her behalf.
Pagel v. Pumphrey, 204 S.W.2d 58 (Tex. Civ.App. 1947), involved a claim that the attorney for one of plaintiff's ancestors (in a trespass to try title action) had agreed to convey mineral interests of his client (by oral agreement). In disposing of the contention that the attorney had authority to convey his client's interest, the court said:
"There is no presumption that an attorney-at-law has authority to bind his client to convey real estate, and when such authority is asserted the burden is upon the person so asserting to allege and prove such authority. 7 C.J.S. Attorney and Client § 76 page 888; * * *
* * * * * *
"[3] It is true, as contended by appellants, that when an attorney is employed to represent a client in a lawsuit he is presumed to have authority to enter his client's appearance in the case and do many other things necessary to the trial of the case. 7 C.J.S. Attorney and Client § 81 page 902. But the rule is quite different when it comes to contracting to convey or conveying real estate..." (Opinion, page 63.)
The Supreme Court of Ohio ruled upon the question in Morr v. Crouch, 19 Ohio St.2d 24, 249 N.E.2d 780 (1969). In that case the court reversed a "journal entry  settlement" in an appropriation case executed by a landowner's attorney without authorization. The condemning authority claimed that the settlement entry had the legal effect of a contract of sale of the land to the State because it was executed by the attorney for the landowner. The court ruled adversely, stating:
"[4] However, the rule in Ohio and elsewhere is that an attorney who is without specific authorization has no implied power by virtue of his general retainer to compromise and settle his client's claim or cause of action... .
* * * * * *
"[5] Moreover, where the power claimed is to sell real estate, the agent's authority must be expressly given to execute a contract for the sale of land before such contract will bind the principal... .
* * * * * *
"[6] The record here discloses that no specific authority was conferred upon the attorney to act as agent for the owner to sell or to convey the land. Neither could such authority be implied, nor was it apparent. *908 Attorney Moore, in testifying at the hearing on the motion to vacate, admitted that he was not given authority to sell or settle. He testified further that he was mistaken as to who actually held title to the land, believing that the owner's husband was a part owner. Accordingly, the document entitled `journal entry  settlement,' although signed by the attorney for the landowners, was not an enforceable contract for the sale of land. A fortiori, it was not a valid conveyance of title." (Opinion, page 783.)
Balzer v. Weisensel, 258 Wis. 566, 46 N.W.2d 763 (1951), involved a written stipulation for settlement made after the case was called for trial. The defendant was not present, but planned to be present on the second day. An agreement was reached between the attorneys for the parties and a written stipulation was prepared, providing a line for defendant's signature. The plaintiffs and their attorneys signed, as did defendant's attorney. The agreement provided for the plaintiffs to convey a small piece of land, for which the defendant was to pay the sum of $450.00 to plaintiffs. After the signing of the agreement, the court dictated an order dismissing the complaint and counterclaims upon their merits, to take effect upon compliance by the parties with the terms of the stipulation. The stipulation was held valid and binding, upon the following reasoning by the court:
"[2] Upon all of the facts and circumstances of this case we are of the opinion that there was ample evidence to hold that defendant had clothed his attorney with apparent authority to settle a case involving as little as this case did. Certainly, if the attorney exceeded his authority by settling a case which his client wished to litigate, the defendant had the burden of demonstrating, this to the trial court upon learning of such unauthorized act. This he failed to do when the opportunity was accorded upon the hearing on the order to show cause." (Opinion, pages 764, 765.)
The Balzer case is readily distinguishable because it simply required the defendant to accept title to a very small piece of land and pay a small sum of money; and in addition, the agreement had already been approved and been made the subject of an order of the court.
In the absence of additional facts and circumstances in the evidence which would justify a contrary conclusion, we hold that the response by appellants' attorney in his October 27 letter that his clients "have indicated they will buy or sell the property for $600.00 per acre", cannot be construed as a binding contract for the sale of an interest in real property upon which a judgment for specific performance may be entered.
For the foregoing reasons, the judgment appealed from be and the same is hereby reversed.
MILLS, C.J., and BOOTH, J., concur.
NOTES
[1] Appellee Mr. Garrett's testimony contained no reference to any acts or conduct on the part of appellants that had any bearing on the authority of their attorney to execute a binding contract to sell their property. One of the appellants, Mrs. Rushing, was called to testify by appellee, but she was asked no question concerning this issue. There was no other evidence by either side touching upon the question of appellants' attorney's authority, other than statements of the attorney himself.
[2] In Miller v. Mueller, Mrs. Mueller's attorney testified that Mrs. Mueller suggested that she was willing to buy her sister, Mrs. Miller's, interest, for $2,500.00, or sell her interest for $2,500.00. Mrs. Mueller testified that she had stated to her attorney, Mr. O'Ferrall, that she would buy for $2,500.00, but would not take $2,500.00 for her interest; that she at no time authorized Mr. O'Ferrall to make any offer or demand, and that even an earlier figure discussed was not an offer, but merely a suggestion of a possible price. She also denied knowing of Mr. O'Ferrall's letter containing a $2,500.00 buy or sell offer, but Mr. O'Ferrall testified that he did tell her he had passed along the suggested proposition to Mrs. Miller's attorney.