GRIMES, Acting Chief Judge.
This is an appeal from a judgment on a directed verdict rejecting a claim for a real estate commission.
Appellants (brokers)[1] obtained an oral listing from V.R. Beardsley to procure a purchaser for a sugarcane farm. At that time, the brokers assumed that Beardsley owned the farm in its entirety since he had managed it for many years. The brokers found a ready, willing and able purchaser upon terms satisfactory to Beardsley and presented him with a signed contract to purchase. Beardsley told the brokers that before signing he had to consult with his two brothers who also had an ownership interest in the farm. After telephoning both of the brothers, Beardsley signed the contract the following day. The contract designated Beardsley and his brothers as seller and warranted that the seller had marketable title. Beardsley signed the contract individually and also signed his two brothers’ names “by V.R. Beardsley." The contract contained a provision acknowledging that the brokers had earned their commission and stated that it would be paid to them even if the seller failed to close unless it was because of defective title.
About ten days later, Beardsley told the brokers that his brothers had decided not to go through with the sale. He suggested that if the brokers wanted to carry the transaction any further, they should get in touch with his son, Brian, who owned a real estate company. When the brokers called Brian, he told them that he thought he could put the transaction back together but that they would have to split the commission with him. The brokers declined this suggestion. They then filed a suit for the real estate commission and requested a jury trial.
Beardsley and his wife owned fifty percent of the property, and each of the two brothers owned a twenty-five percent interest. Therefore, all four of them were joined as defendants. The two brothers took the position that they had not agreed to the sale and had told Beardsley that they first wanted to examine the written contract. The brokers had learned that Mrs. Beardsley had an interest in the property before the contract was signed because she asked one of them when he was going to sell “our farm.” Beardsley admitted to having discussed the proposed sale with her. At the conclusion of the brokers’ case, the court directed a verdict against them and entered judgment for the owners. We reverse.
The brokers presented a prima facie case on two theories: (1) that they had procured a ready, willing and able purchaser, and (2) that there was a breach of the written contract to pay the commission. The essential issue was whether Beardsley had authority to act for the other owners.
In considering the proof necessary to establish an agency relationship, this court in McCabe v. Howard, 281 So.2d 362 (Fla. 2d DCA 1973), said:
The existence of an agency may be shown by any substantial evidence, either direct or circumstantial and the fact of an agency is a jury question.
281 So.2d at 363. An agent’s authority may be implied or apparent; it need not be conferred in express terms. American Ladder & Scaffold Co. v. Miami Ventilated Awning Manufacturing Co., 161 So.2d 699 (Fla. 3d DCA 1964). In Tampa Sand *46 & Material Co. v. Davis, 125 So.2d 126 (Fla. 2d DCA 1960), this court explained:
The power of an agent to bind his principal may rest on real or actual authority conferred in fact by the principal or may be founded on apparent or ostensible authority arising when the principal allows or causes others to believe the agent possesses such authority, as where the principal knowingly permits the agent to assume such authority or where the principal by his actions or words holds the agent out as possessing it.
125 So.2d at 127. Moreover, a jury is entitled to infer from the facts and circumstances of the case the existence of an agency even where the alleged principal and agent both deny the existence thereof. McCabe.
The question here is not whether the prospective purchaser could enforce the sale of the property. See Miller v. Moylan, 72 So.2d 380 (Fla.1954). Even in the absence of a sales contract, where a broker in good faith procures a purchaser ready, willing and able to buy the property on the terms fixed by the seller, he is entitled to his commission if the seller refuses to go through with the transaction not for any fault of the broker or the purchaser. Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384 (1945).
The owners never contended that Beardsley did not have authority to list the property for sale with the brokers. It was not until much later that the brokers even knew that anyone else had an interest in the property. There is no doubt that after receiving the contract Beardsley discussed the terms of the sale with both of his brothers before signing the contract. One of the brokers testified that Beardsley told them that he was signing the contract for his brothers because both of them were agreeable to the terms of the sale. The subsequent introduction of Beardsley’s son into the transaction lends credence to the assertion that the repudiation of the contract was lacking in good faith.
Moreover, the jury could have concluded that the contention that Mrs. Beardsley had not agreed to the sale because her signature was not on the contract was merely an afterthought. She knew of the brokers’ efforts to sell the property, and there was evidence that her husband told her about the proposed contract. Cf Chastain v. Carroll, 307 So.2d 491 (Fla. 2d DCA 1975) (husbands held liable for real estate commission when wives, who had not signed the contract with broker, refused to sell).
We reverse the judgment entered upon the directed verdict and remand the case for a new trial.
SCHEB and HALL, JJ., concur.

. There was more than one broker involved but their position in the case was identical. Therefore, for purposes of this opinion, the act of an individual broker shall be considered the act of all of them.