674 So.2d 193 (1996)
Julia STRINGER, Appellant,
v.
Lawrence KATZELL, M.D., individually, Lawrence Katzell, M.D., P.A., a Professional Association, David G. Droller, M.D., individually, David G. Droller, M.D., P.A., a Professional Association, Appellees.
No. 95-1242.
District Court of Appeal of Florida, Fourth District.
May 29, 1996.
*194 Laurence T. Adelman of Laurence T. Adelman, P.A., Coral Springs, for appellant.
Gina Caruso of Hicks, Anderson & Blum, P.A., Miami; Metzger, Sonneborn & Rutter, P.A., West Palm Beach, and George Hartz Lundeen Flagg & Fulmer, Fort Lauderdale, for appellees.
GROSS, Judge.
This is an appeal from an order granting a directed verdict for defendants in a medical malpractice action. We reverse.
Appellant was hospitalized in August, 1992 for bacterial endocarditis. Appellees, Katzell and Droller, were appellant's treating physicians during her hospitalization. Appellees treated appellant with gentamicin, an antibiotic appropriate for treatment of endocarditis. However, gentamicin is potentially toxic and must be monitored to prevent damage to the eighth cranial nerve, which may result in loss of balance and hearing.
Appellant filed a medical malpractice suit against appellees, alleging that their failure to monitor the gentamicin levels caused injury to her inner ear, resulting in permanent vestibulopathy, an abnormality in balance. At the close of appellant's case, appellees moved for a directed verdict. The trial court found that there was sufficient evidence as to the duty of care and the breach of that duty, but granted the directed verdict based on lack of evidence regarding causation.
Dr. Todd, a neurologist, was a key witness regarding causation. Dr. Todd took appellant's history which revealed her hospitalization and treatment with gentamicin. His neurological exam revealed that appellant was ataxic, which means that she could not tandem walk (toe-to-heel) due to a lack of balance. On direct examination, Dr. Todd opined that appellant had a permanent vestibulopathy caused by gentamicin toxicity.
On cross examination, Dr. Todd receded from his opinion based upon hypothetical questions posed by defense counsel. His retraction was based on the existence of two factors: (1) that appellant ingested drugs or alcohol to cause the symptoms Dr. Todd observed during office visits with him and (2) that another expert (Dr. Grobman) concluded that appellant was faking or embellishing her injury.[1] Dr. Todd stated that if he had less than the full history at the time of his examinations he could have been misled. He also indicated that if the two factors proved to be invalid, his original opinion would stand. Of course, appellant's position was that she was not under the influence of drugs or alcohol at the time of her visits with Dr. Todd and she did not feign her symptoms.
*195 Dr. Nadler was plaintiff's expert witness primarily on appellees' breach of their duty of care by failing to monitor appellant's gentamicin levels. After reading all the medical records, including Dr. Grobman's deposition, and after viewing the surveillance tapes of appellant, Dr. Nadler also concurred with Dr. Todd's diagnosis and testified that he believed that gentamicin toxicity was the only explanation for the cause of appellant's problem. Dr. Nadler opined that vestibulopathy became permanent in August or September, 1992, but stated that the only way to definitively determine whether a vestibulopathy is permanent is by an autopsy. He conceded that his opinion was based, in large part, on Dr. Todd's "formal evaluation of a vestibular function."
The law concerning a motion for directed verdict is well settled. The motion admits the truth of all facts in evidence, and every reasonable conclusion or inference based on those facts, which is favorable to the non-moving party. Hartnett v. Fowler, 94 So.2d 724, 725 (Fla.1957); Parts Depot Co., L.P. v. Florida Auto Supply, Inc., 669 So.2d 321, 324 (Fla. 4th DCA 1996). If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper. Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47, 51 (Fla. 4th DCA 1994). In ruling on the motion, a trial court may not pass on the credibility of witnesses or weigh competing evidence. Duval Laundry Co. v. Reif, 130 Fla. 276, 177 So. 726, 729 (Fla.1937); Moisan v. Frank K. Kriz, Jr. M.D., P.A., 531 So.2d 398, 399 (Fla. 2d DCA 1988). In this case, the trial court violated these principles by viewing the evidence in a light favorable to the moving parties. The strength of Dr. Todd's opinion on causation turned on the credibility of appellant and the weight to be given to appellees' expert, Dr. Grobman. Looking at the evidence through the lens of appellant's best case, the jury could believe that appellant was truthful in court and with examining doctors, and disbelieve Dr. Grobman's conclusions. It is the jury's unique function in a trial to evaluate and weigh all the evidence, including expert testimony. Easkold v. Rhodes, 614 So.2d 495 (Fla.1993). This is especially true in a case where medical opinions are based in part on the veracity of the patient. Id. at 497-98. Florida Standard Jury Instruction (Civil) 2.2(b) provides that the jury "may accept [expert] testimony, reject it, or give it the weight [the jury] think[s] it deserves, considering the knowledge, skill, experience, training, or education of the witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case." By their cross examination, appellees' attorneys had done an excellent job in weakening appellant's case. However, appellant was entitled to have the jury make the final call on the issue of causation. Appellant's other point on appeal, concerning the bias of the trial judge against her, is without merit.
REVERSED AND REMANDED.
KLEIN and PARIENTE, JJ., concur.
NOTES
[1] At the time of the directed verdict, Dr. Grobman had not testified at trial. One of appellant's experts, a rehabilitation counselor, was cross examined at length as to how Dr. Grobman's findings affected her opinion. She observed that before he had begun testing appellant, Dr. Grobman had already formed the opinion that she was a "liar," based on his preliminary examination. At least a portion of Dr. Grobman's opinion was subjective, involving his interpretation of appellant's performance of certain physical tasks, such as standing on one foot with both eyes closed.