DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FLORIDA POWER & LIGHT COMPANY,**
Appellant,

v.

**SAMUEL J. MCROBERTS,**
Appellee.

No. 4D17-2399

[October 10, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Martin H. Colin and David E. French, Judges; L.T. Case No. 50-2014-CA-012762-XXXX-MB.

Charles L. Schlumberger, Senior Litigation Counsel, and Robert Sendler, Juno Beach, for appellant.

Alan B. Rose, L. Louis Mrachek, Gregory S. Weiss, and Michael W. Kranz of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., West Palm Beach, for appellee.

KUNTZ, J.

An agent must have authority to bind its principal. The issue presented in this appeal is whether the alleged agent had authority to bind FPL, the principal, while tailgating outside a football game. We conclude the appellee failed to establish the individual at the tailgate party had actual or apparent authority to enter into a brokerage contract on FPL's behalf. Thus, we reverse and remand for entry of a directed verdict in favor of FPL.

### *Background[1]*

Samuel McRoberts attended a tailgate party before the Florida State Seminoles played the Virginia Tech Hokies in Tallahassee. Jorge "Buck"

---

[1] We present the facts in the light most favorable to McRoberts. *See State, Dep't of Children & Family Servs. v. Amora*, 944 So. 2d 431, 435 (Fla. 4th DCA 2006).

Martinez also attended. McRoberts knew from either reading the paper or online that Martinez was FPL's "senior project director of development."

McRoberts "couldn't wait to talk to him" because FPL was "the biggest company in the state of Florida and the biggest land owner." Before the game started, he talked to Martinez for "right around 30 minutes." During the conversation, he asked Martinez about FPL's process for purchasing land and "kind of hammer[ed] him a little bit" about whether FPL was looking to make any acquisitions. Martinez "was really ramped up on talking about clean energy" and the "incredible tax incentives . . . for clean energy development." Martinez told him that FPL was looking to acquire property for clean energy projects but that for FPL to take advantage of federal tax incentives, it would have to be a joint venture. This excited McRoberts, who "wanted to sell him some land."[2]

As Martinez walked into the stadium, McRoberts approached him and they spoke for "two or three minutes." McRoberts "went up and [ ] said [to Martinez], you realize I make my living off real estate commissions, right?" Martinez responded in the affirmative. McRoberts asked Martinez if he would pay him "a reasonable real estate commission, a fair real estate fee for introducing you to the ultimate property that you would be able to put your power plant on and integrate your 300 megawatts of commercial solar?" Martinez responded, "okay," and they "shook on it. I mean, we shook hands. It was a solid handshake."

During this conversation, McRoberts divulged the property's location. But, according to McRoberts, Martinez explained that FPL could not immediately enter into a transaction unless it was a joint venture. In response, McRoberts asked if Martinez would "protect" him "for a reasonable finder's fee if I can pinpoint for you who the main joint venture investor would be?" Martinez responded with "an emphatic yes." A specific commission was not discussed—only that Martinez would protect McRoberts. Still, McRoberts gave Martinez the investor's name.[3]

---

[2] Martinez denies that FPL has ever entered into a joint venture on renewable energy projects.

[3] According to Martinez, FPL learned about the property through the friend and professional acquaintance of a colleague at FPL. The FPL colleague and the friend met while the friend was serving as the executive director of a large governmental entity in South Florida. The two also served on boards together. Martinez, his FPL colleague, and the friend all testified that the friend approached the FPL colleague to introduce an investor related to the property FPL ultimately acquired.

When the discussion concluded, Martinez instructed: "Don't call me on my office number and don't call me on my cell number. I want to give you a cell number. You can reach me on that cell number, but don't call me next week, because I'm not going to be available next week, but call me the following week." McRoberts thought it was "the weirdest thing ever" that Martinez "didn't want me to call him on his cell phone" or at the office; it "seemed strange." But "strange" or not, McRoberts complied.

Although McRoberts asked for a business card, Martinez did not give him one. Instead, Martinez wrote a phone number on the back of one of McRoberts's business cards. When McRoberts called the number, a man named Christopher answered. Christopher testified at trial that he has never had any contracts with FPL. He and Martinez both testified that the only time they met each other before trial was at Christopher's deposition.

Martinez had "no clue who [Christopher] was" and had never communicated with him. But McRoberts testified that he called the number listed on the business card on more than one occasion and after each call, Martinez returned his call from a different phone number. McRoberts assumed Martinez was not calling directly because Martinez "wanted to keep the deal quiet with him."

Yet McRoberts called FPL's general residential customer service phone number more than twenty-one times over an extended period, purportedly trying to reach Martinez. He first called the general customer service number on Christmas Day and left a message for Martinez "because [he] wanted to remember that [he] tried to" reach him.

He also called Martinez's cell phone. McRoberts testified that he spoke to Martinez when he called his cell phone, but felt as though Martinez was "pushing [him] off." After a few calls, they stopped communicating, and McRoberts made no efforts to memorialize or follow through with the agreement.

FPL eventually purchased the property that McRoberts purportedly told Martinez about at the tailgate party—3,127 acres for $40 million in June 2011 and another 4,667 acres for $35 million in May 2013. FPL did not pay McRoberts a commission, so he sued FPL for breach of contract and unjust enrichment. The circuit court denied FPL's motion for summary judgment on the breach of contract claim, but granted FPL summary judgment on the unjust enrichment claim.

As a result, the only claim remaining for trial was the breach of contract claim. McRoberts alleged FPL breached the contract formed at the tailgate

3

party. FPL argued that McRoberts had nothing to do with the deal and did not provide the lead or contact that led to FPL's purchase of the property. McRoberts prevailed at trial, and the jury awarded him $1.5 million in damages.

### *Analysis*

FPL argues the court erred when it denied FPL's summary judgment motion and later its motion for directed verdict on Martinez's authority to enter into a contract on FPL's behalf. We agree.

It is a plaintiff's burden to establish the authority of an agent to act on the principal's behalf. *Lee v. Melvin*, 40 So. 2d 837, 838 (Fla. 1949) ("When plaintiff in a civil action seeks to recover upon a contract alleged by him to have been made with the defendant through the latter's agent, the burden of proof is upon plaintiff to show the authority of the agent for making the contract." (internal citation omitted)).

An agent's authority can be actual or apparent. Actual authority "exists when a principal delegates authority to an agent by expressly authorizing the agent to do a delegable act." Richard A. Lord, 12 Williston on Contracts § 35:10 (4th ed.); *see also* Restatement (Third) of Agency § 2.01 (Am. Law Inst. 2006). To establish actual authority, a plaintiff must prove: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990) (citing Restatement (Second) of Agency § 1 (Am. Law. Inst. 1957)).

Apparent authority is defined as the authority that "the principal knowingly permits the agent to assume or which he holds the agent out as possessing." *H. S. A., Inc. v. Harris-In-Hollywood, Inc.*, 285 So. 2d 690, 692–93 (Fla. 4th DCA 1973) (quoting *Fidelity & Cas. Co. v. D.N. Morrison Constr. Co.*, 156 So. 385, 387 (Fla. 1934)). To establish apparent authority, a plaintiff must prove: "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party relying on the representation." *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000) (citing *Ideal Foods, Inc. v. Action Leasing Corp.*, 413 So. 2d 416, 418 (Fla. 5th DCA 1982)).

4

Simply put, McRoberts failed to establish the first element of both actual and apparent authority.[4] That is, it was not reasonable to assume Martinez had the authority to bind FPL, and the circumstances surrounding the purported agreement lend no credibility to the reasonableness of assuming his authority.

In *Lensa*, we explained that a third party's reliance on the apparent authority of an agent must be reasonable. 765 So. 2d at 298 (citing *Rushing v. Garrett*, 375 So. 2d 903, 906 (Fla. 1st DCA 1979)). The fact that the transaction did not occur in the ordinary course of business influenced our conclusion in *Lensa*. *See id.*

Here, it was not reasonable for McRoberts to conclude that Martinez had the authority to act on FPL's behalf at a tailgate party—FPL is a company that McRoberts described as "the biggest company in the state of Florida and the biggest land owner." McRoberts testified that he knew of Martinez's position "from reading it in the paper," that he "might have seen it online somewhere," and that he "knew [Martinez] had a very high position in development." That, however, does not establish that FPL held out Martinez as having the authority to enter into the contract.

This transaction was not in the ordinary course of business—it allegedly occurred outside a Florida State University football game. It is unreasonable to assume that an employee of the company McRoberts described as "the biggest company in the state of Florida" would have the authority to bind his employer to a multi-million dollar obligation at a tailgate party. Nor is it reasonable to assume that a highly regulated utility would conduct business in this manner.

Similarly, the actual conversation does not support Martinez's authority to bind FPL. According to McRoberts, Martinez told McRoberts not to call him at the office or on his cell phone. McRoberts himself testified that this instruction was "strange" and described it as "the weirdest thing ever." Martinez also declined McRoberts's request for a business card, opting instead to write down a phone number for an unknown person on the back of McRoberts's own card. Based on the instructions not to call Martinez at the office or on his cell phone, McRoberts tried to communicate with him by leaving messages on FPL's general customer service line. This evidence could not reasonably show that Martinez had the authority to bind FPL.

---

[4] The parties use the terms apparent authority and apparent agency interchangeably.

Finally, FPL never ratified Martinez's authority to bind it. In *Perper v. Sonnabend*, 221 F.2d 142 (5th Cir. 1955), the Fifth Circuit applied Florida law and found that a plaintiff failed to establish that a hotel manager had actual or apparent authority to enter into a real estate sales contract. *Id.* at 144. In that case, the hotel manager explicitly informed the broker that he had authority to enter the contract. *Id.* at 143. But, an agent cannot bind a principal solely through her own actions. *See id.* at 144. Instead, the principal must ratify the agent or the authority of the agent to act. *Id.* at 145; *see also Pan-Am. Constr. Co. v. Searcy*, 84 So. 2d 540, 542–43 (Fla. 1955). In *Perper*, the principal did not ratify the act of the agent. 221 F.2d at 145. As a result, the agent did not bind the principal. *Id.* So too here.

FPL undertook no action after the purported agreement to ratify the agreement or Martinez's authority to act on its behalf. "There was no formal act by" FPL, or even an informal act by FPL, "which would denote the holding out of [Martinez] as possessing the authority to act on its behalf." *See Lensa*, 765 So. 2d at 299 (Gross, J., concurring) (internal quotation omitted).

### *Conclusion*

The court erred in denying the motion for directed verdict, as the evidence at trial was insufficient for a jury reasonably to conclude that Martinez had actual or apparent authority to act as FPL's agent. Thus, FPL is entitled to the entry of a directed verdict in its favor.

*Reversed and remanded.*

MAY, J., concurs.
CIKLIN, J., dissents with opinion.


CIKLIN, J., dissenting.

I respectfully disagree with the majority's decision to divest the empaneled jury of its fact-finding responsibility to determine whether authority existed in the fact situation before us. This case presents a classic "he said – he said" factual dispute where the parties' testimony and evidence were diametrically opposed. McRoberts presented sufficient evidence to support a positive conclusion. Therefore, I must respectfully dissent from the majority's conclusion that the factual determination should have been taken out of the jury's hands.

There existed a jury question as to actual or apparent authority; i.e., whether Martinez was acting within the scope of his employment with FPL or reasonably appeared to be doing so.

> Three elements are needed to establish an apparent agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation. *See Ideal Foods, Inc. v. Action Leasing Corp.*, 413 So. 2d 416, 418 (Fla. 5th DCA 1982). The reliance of a third party on the apparent authority of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal, *see Rushing v. Garrett*, 375 So. 2d 903, 906 (Fla. 1st DCA 1979), and "not by agents who often ingeniously create an appearance of authority by their own acts." *Taco Bell of California v. Zappone*, 324 So. 2d 121, 124 (Fla. 2d DCA 1975).

*Lensa Corp.*, 765 So. 2d at 298. "The question of whether acts are within the scope of an agent's apparent authority is a *question of fact*, the resolution of which will not be set aside unless clearly erroneous." *Hobbs Const. & Dev., Inc. v. Colonial Concrete Co.*, 461 So. 2d 255, 259 (Fla. 1st DCA 1984) (emphasis added).

As I see it, only the first element was meaningfully disputed by FPL on appeal. However, McRoberts's testimony clearly supported this element. It is crucial to keep in mind that "[a]n agent's authority may be implied or apparent; *it need not be conferred in express terms.*" *Sugarland Real Estate, Inc. v. Beardsley*, 502 So. 2d 44, 45 (Fla. 2d DCA 1987) (emphasis added). McRoberts testified that he knew that Martinez was "the Senior Project Director of Development for Florida Power and Light" because he read it in the paper and saw it on FPL's website. By listing on its website that Martinez held the position of Senior Director of Development for FPL for the entire state, and by publishing his position in the newspaper, FPL's own actions reasonably represented that Martinez had authority to contract for land for new projects. Or at a minimum, this was sufficient evidence from which a jury could reasonably infer that Martinez had authority to bind FPL to a land deal. If not the *Senior* Project Director of Development, then who?

Further, Martinez told McRoberts that FPL purchases land way ahead of time and holds it for future use, and that FPL was seeking to place any new power plants as close to the main power grid as possible. While not a direct assertion from FPL, this knowledge of FPL's plans with respect to

acquisition of property boosted the reasonableness of McRoberts's belief in Martinez's authority.

As the majority points out, this deal occurred at a tailgate party and not in the ordinary course of business. However, this fact does not make McRoberts's reliance unreasonable; rather, it merely prevents application of a *presumption* of authority. *See Lensa Corp.*, 765 So. 2d at 298 ("As to acts in the ordinary course of business, courts have consistently recognized that a presumption of authority exists in the case of acts made or done by presidents."). Furthermore, the jury may very well have determined that it was not unreasonable for parties to enter into a business deal at a sporting event. It is certainly not unheard of for businesses to enter into deals at golf courses, in restaurants, or in other traditionally social settings. Indeed, many major companies purchase boxes or suites at sports stadiums and arenas for the purpose of furthering their business.

The majority also points out that there was no ratification of FPL's actions, but ratification is not a necessary element of apparent or implied authority.

"A motion for directed verdict should be granted only when the evidence viewed in the light most favorable to the non-moving party shows that *a jury could not reasonably differ as to the existence of a material fact . . . .*" *State, Dep't of Children & Family Servs. v. Amora*, 944 So. 2d 431, 435 (Fla. 4th DCA 2006) (emphasis added). "If there is *any* evidence to support a possible verdict for the non-moving party, a directed verdict is improper." *Stringer v. Katzell*, 674 So. 2d 193, 195 (Fla. 4th DCA 1996) (emphasis added). The credibility of the witnesses and weight of the competing evidence are concerns for the jury, not the jurist. *See id.* (finding "trial court violated these principles by viewing the evidence in a light favorable to the moving parties").

McRoberts's testimony constituted evidence from which a jury could reasonably find apparent authority. Contrary to the majority's conclusion, the trial court did not err in denying the motion for directed verdict and allowing the jury to do its job by reconciling conflicting testimony.

I would affirm.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**